### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

THEODORE TINSLEY,          :

      Petitioner        :    **CIVIL ACTION NO. 3:15-1296**

      v.             :        **JUDGE MANNION**

WARDEN R.A. PERDUE,    :

      Respondent    :

### MEMORANDUM

On July 15, 2015, the petitioner, an inmate at the Federal Correctional Institution at Schuylkill, ("FCI-Schuylkill"), Minersville, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. 1). After receipt of the appropriate filing fee, on September 28, 2015, an order to show cause was issued. (Doc. 3). A response to the petition was filed on October 19, 2015. (Doc. 4). On November 20, 2015, the petitioner filed a reply brief. (Doc. 7).

Upon review, the following claims are made by the petitioner. On September 2, 2014, the petitioner provided a urine sample to Correctional Officer Warner, ("C.O. Warner"). In collecting the sample, the petitioner states that C.O. Warner violated a number of the procedures for the collection of urine set forth in BOP Program Statement 6060.08. Subsequently, on September 10, 2014, the petitioner was called to Lieutenant Vuksta's office and was given an incident report for committing the prohibited act of "Use of narcotics, or Related Paraphernalia not Prescribed by Medical". The incident

report was written by Senior Officer Devine, who the petitioner claims had no personal knowledge of how the urine samples were collected from each inmate by C.O. Warner. When questioned about the incident, the petitioner indicated that he had "no comment" because he wanted to research the procedures for a urinalysis to determine whether C.O. Warner had complied with them. The petitioner was remanded to the Special Housing Unit, ("SHU"), pending disposition of the charges against him.

While in the SHU, the petitioner provides that he submitted a number of written requests to access the electronic law library to prepare for his disciplinary hearing. He claims, however, that he was never given access to the library. On September 16, 2014, the petitioner was given a hearing before the Unit Disciplinary Committee, ("UDC"), which then referred the matter to a Discipline Hearing Officer, ("DHO"). At his hearing before the UDC, the petitioner again requested access to the library and was told to submit a request to the SHU staff.

On September 22, 2014, the petitioner had a hearing before DHO Bittenbender, at which he was advised of his rights. The petitioner informed the DHO that he was not provided access to the library to prepare a defense and indicated that he had no comment when asked if he was guilty of the offense. In finding that the petitioner committed the charged offense, the DHO considered a memorandum from C.O. Devine dated September 10, 2014; a

2

chain of custody report dated September 2, 2014; and a toxicology report from Pharmatech dated September 5, 2014. The DHO found, in part, that the "[i]nculpatory evidence in the form of the Chain of Custody Form dated 9/2/14 corroborated the evidence cited in the [toxicology] report . . ., [that] clearly indicates the urine sample provided by [petitioner] is the same urine sample which tested positive for marijuana." The DHO further noted that "[u]pon questioning . . ., [petitioner] . . . neither admitted nor denied the charge . . ., [that he] . . . elaborated upon his plea by stating, he had no comment . . ." and concluded that the petitioner committed the prohibited act of use of drugs/alcohol in violation of Code 112 on September 2, 2014. The DHO imposed the following sanctions: ninety days disciplinary sanctions; forty-one days disallowance of good conduct time; 339 days forfeiture of non-vested good conduct time; three years loss of phone privileges; three years loss of visit privileges; three years loss of no contact visits; and a $40.00 monetary fine.

The petitioner claims in the instant action that he was not afforded due process in relation to his disciplinary proceedings and that the requirements of the Administrative Procedure Act, ("APA"), were violated by way of the monetary sanction. (Doc. 1). As relief, the petitioner requests that this court order his good time credits and institutional privileges be restored, declare that the monetary fine is invalid and be restored to his inmate account, and

3

expunge the conviction stemming from the September 2, 2014, urinalysis from his record. The petitioner further seeks a declaratory judgment that the BOP regulation which allows for the imposition of a monetary fine violates the APA and the Due Process Clause.

The respondent argues that this court should dismiss the instant action for the petitioner's failure to exhaust administrative remedies. To this extent, the respondent provides that on October 14, 2015, a search of BOP records was conducted to determine whether the petitioner had exhausted available administrative remedies regarding the issues raised in the instant petition. (Doc. 4, Ex. 1). As of October 14, 2015, the petitioner had filed a total of six administrative remedies while at FCI-Schuylkill. Only one, Administrative Remedy No. 797471-R1, related to the issues raised in the instant action. (Id., Attachment A). The petitioner filed this administrative remedy to the Northeast Regional Office on October 8, 2014, appealing the incident report challenged in the instant action, arguing that the sanctions he received were excessive and unjust. (Id.). On November 7, 2014, the petitioner's administrative remedy was denied and he was advised of his right to file an appeal with the Central Office within thirty days. (Id.; Doc. 4, Ex. 1, Attachment C). According to the respondent, there is no record that the petitioner filed an appeal with the Central Office. (Doc. 4, Ex. 1). The respondent further contends that there is no record that the petitioner has ever initiated a grievance with respect to his

claims that staff failed to maintain a chain of custody during his disciplinary hearing, staff failed to provide him with access to the electronic law library, or that the BOP lacks the authority to use monetary sanctions for disciplinary infractions. (Id.).

Federal prisoners are generally required to exhaust administrative remedies prior to seeking a writ of habeas corpus pursuant to §2241. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Where a petitioner has failed to exhaust his administrative remedies due to a procedural default, and the default renders the administrative process unavailable, consideration of a §2241 claim is barred unless the petitioner can show cause and prejudice. Speight v. Minor, 245 Fed. App'x 213, 215 (3d Cir. 2007). However, the Third Circuit has also "held that the administrative exhaustion requirement in this context may be excused if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served." Cerverizzo v. Yost, 380 Fed. App'x 115, 116 (3d Cir. 2010) (citations omitted).

The BOPs' well-established multi-tier administrative remedy program is set forth in 28 C.F.R. §§542.10-542.19. Pursuant to the program's provisions, appeals of DHO decisions must be submitted initially to the Regional Director for the region where the inmate is housed within twenty days of the DHO decision. 28 C.F.R. §§542.14(d)(2), 542.15(a). Once an appeal is filed to the

Regional Director, a response is due by the Regional Director within thirty calendar days, and if no response is received within that time, the inmate may consider the absence of a response to be a denial. Id. at §542.18. If the inmate is not satisfied with the Regional Director's response, he may submit an appeal to the General Counsel (Central Office) within thirty calendar days of the date the Regional Director signed the response. Id. at §542.15(a). An appeal to the General Counsel is the final administrative appeal. Id. Completion of an appeal to the General Counsel constitutes exhaustion of administrative remedies. See Lindsey v. Thomas, 2014 WL 3890005, at *5 (M.D.Pa. Aug. 8, 2014). Once an appeal is filed with the General Counsel, a response shall be made in forty calendar days. 28 C.F.R. §542.18. Again, if a response is not received within this time, the inmate may consider the absence of a response to be a denial. Id.

In his reply brief, the petitioner does not deny that he did not file a final appeal with the General Counsel, but argues that he did not do so because he never received the denial of his appeal from the Regional Office. He claims, therefore, that administrative remedies were not available to him because he did not know to file an appeal to the General Counsel. As discussed, the record demonstrates that the petitioner's Regional Office appeal was denied on November 7, 2014. However, even if for some reason the petitioner did not receive a copy of the denial, as set forth above, the

6

regulations provide that an absence of a response within the required time is to be construed by the inmate as a denial, and the petitioner should have proceeded accordingly to fully exhaust his administrative remedies. The petitioner took no action to fully exhaust his administrative remedies and offers no valid explanation for his failure to follow the well-established administrative regulations.[1] On this basis, the instant petition will be dismissed. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  May 3, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1296-01.wpd

---

[1]The petitioner cites to the case of Small v. Camden, 728 F.3d 265 (3d Cir. 2013) for the proposition that the failure of prison officials to provide a timely response to a grievance renders an administrative remedy unavailable. However, Small is distinguishable from the instant action in that the inmate in Small was housed at a local county correctional facility, which had in place different administrative procedures. Here, the BOP has in place well-established administrative procedures, which direct that an inmate may deem denied any response which is not received in a timely manner.